IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   *Plaintiff*,<br><br>v.<br><br>LAMOND JENKINS,<br>   *Defendant* | Civil Action No. ELH-18-515 |

**MEMORANDUM**

On May 27, 2020, defendant Lamond Jenkins, proceeding pro se, filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), asserting "extraordinary and compelling reasons" in light of the COVID-19 pandemic. ECF 30 (the "Motion"). The government filed a response in opposition to the Motion (ECF 36), along with an exhibit. ECF 36-1.

No hearing is necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I.   Background**

On October 10, 2018, a grand jury sitting in the District of Maryland returned an indictment charging Jenkins with possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count One); possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count Two); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three).

Jenkins entered a plea of guilty to Count Two on February 25, 2019. ECF 20. The plea was tendered pursuant to a Plea Agreement. ECF 21. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to a term of imprisonment of 60 months. *Id.* ¶ 9.

The Plea Agreement included a factual stipulation. *Id.* at 10. According to the stipulation, officers with the Baltimore City Police Department ("BPD") stopped a vehicle driven by Jenkins. *Id.* BPD officers "smelled the strong odor of burned marijuana and removed the Defendant and front seat passenger to conduct a search." *Id.* They recovered 33.82 grams of marijuana, packaged for distribution; $373.00 in U.S. currency; and "a fully loaded Heckler & Koch SP Company pistol . . . containing ten (10) .40 caliber Smith & Wesson cartridges. The firearm was hidden in the vehicle's steering column." *Id.*

Jenkins admitted that he owned the firearm and had placed it in the vehicle's steering column. *Id.* He also admitted "that he sells marijuana in the Hamilton area of Baltimore, Maryland." *Id.* Prior to possessing the firearm, Jenkins "had been convicted of a crime punishable by more than one-year imprisonment, and his civil rights had not been restored." *Id.* And, the weapon and cartridges were manufactured outside of Maryland. *Id.*

Sentencing was held on May 10, 2019. ECF 25. According to the Presentence Report ("PSR," ECF 24), the defendant was 25 years of age, with a date of birth in July 1993. *Id.* at 2. The Amended PSR (ECF 27) reflected a final offense level of 25 (*id.* ¶ 26) and a Criminal History Category of III. *Id.* ¶ 37. The advisory sentencing guidelines called for a period of incarceration ranging from 70 to 87 months. *Id.* ¶ 70. Pursuant to the C plea, however, Jenkins was sentenced to a term of 60 months, with credit from June 1, 2018. ECF 28. He was also sentenced to three years of supervised release. *Id.*

Jenkins is incarcerated at FCI Schuylkill. ECF 30 at 1. He requested compassionate release from the warden, asserting that he was "bound to catch" COVID-19. ECF 36-1 at 3. His request was denied on June 8, 2020, because his "medical history does not meet the criteria . . . regarding a Compassionate Release/RIS for inmates with medical conditions" and he is "currently able to

2

independently adapt to activities of daily living and [is] able to perform self-maintenance activities in a correctional environment." *Id.* at 2. The warden also noted that Jenkins is ineligible for compassionate release because his recidivism risk is "high" and he had not provided his "intended release residence." *Id.* at 3.

## II.   Discussion

### A.  Statutory Background

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. Section 3582 was adopted as part of the Sentencing Reform Act of 1984. It originally permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished. The BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See*

*Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018). As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Section 3582(c) is titled "Modification of an imposed term of imprisonment."  Under § 3582(c)(1)(A), the court, upon motion of the Director of BOP or the defendant, upon exhaustion of administrative rights,  may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction

4

of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:[1]
>
> (A)   Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) **suffering from a serious physical or medical condition**,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

---

[1] Subsection (2) of U.S.S.G. § 1B1.13 establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). And, compassionate release is a "rare" remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### B.  COVID-19

It is necessary to acknowledge the circumstances that have led to defendant's Motion. We are currently "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at

*1 (D. Md. May 20, 2020). That crisis is COVID-19.[2] The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

The virus is highly contagious. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories...." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted). And, there is currently no vaccine, cure, "or proven effective treatment" that is available. *Id.* (citation omitted).

The pandemic "has produced unparalleled and exceptional circumstances affecting every aspect of life as we have known it." *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868, at *1 (E.D. Mich. May 21, 2020), stayed, ___ Fed. App'x ___ 2020 WL 3100187 (6th Cir. June 11, 2020). For a significant period of time, life as we have known it came to a halt. Although many businesses have since reopened, they are generally subject to substantial restrictions. And, some businesses are again facing closure, due to the upswing in COVID-19 cases.

As of July 5, 2020, COVID-19 has infected about three million Americans and caused over 130,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed July 7, 2020). Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness. The risk factors include age (over 65); lung disease; chronic kidney disease; serious heart disease;

---

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

On June 25, 2020, the CDC revised its guidance to recognize a set of persons who are at higher risk of severe illness from COVID-19, and it created a second category for persons who "might" be at risk for complications from COVID-19. For example, "Severe to moderate asthma" is an underlying medical condition that was moved from the former category to the latter and is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

Thus far, the only way to slow the spread of the virus is to practice "social distancing." *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020). Social distancing is particularly difficult in the penal setting, however. *Seth*, 2020 WL 2571168, at *2. Prisoners have little ability to isolate themselves from the threat posed by the coronavirus. *Id.*; *see also Cameron*, 2020 WL 2569868, at *1. They are not readily able to secure safety products on their own to protect themselves, such as masks and hand sanitizers. Consequently, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also* Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to employ effective social distancing measures,

and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely");[3] *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of COVID-19. *Seth*, 2020 WL 2571168, at *2. Notably, the BOP has implemented substantial measures to protect prisoners from COVID-19, to mitigate the risks, and to treat those who are infected. *See* ECF 36 at 10-12 (detailing preventive and mitigation measures that the BOP has implemented to combat COVID-19). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19. The DOJ has adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

Moreover, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney

---

[3] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

Nevertheless, as in the country as a whole, the virus persists in penal institutions.[4] As of July 7, 2020, the BOP reported that 2,163 inmates and 190 BOP staff tested positive for COVID-19; 5,137 inmates and 603 staff have recovered; and 94 inmates and one staff member have died from the virus. *See* https://www.bop.gov/coronavirus/ (last accessed July 7, 2020). With respect to FCI Schuylkill, where Jenkins is a prisoner, there is currently one inmate with the illness, among about 1,052 prisoners, and no staff members who are ill. *Id.* No inmates have died. *Id.*

### C. Analysis

Jenkins does not provide any information in the Motion about any medical conditions that might qualify him for compassionate release. ECF 30. He "avers that he meets several prongs required in Attorney General Barr's Memorandum, the First Step Act, the Cares Act, and the BOP's Program Statement . . . ." *Id.* at 1. According to Jenkins, it is "physically impossible to social distance in prison." *Id.*

The government counters that this "conclusory and barebones assertion does not entitle [Jenkins] to relief." ECF 36 at 1. Therefore, the government argues that Jenkins is not eligible for compassionate release. *Id.* at 12.

---

[4] The *New York Times* has reported that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide," N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

Jenkins is almost 27 years old. He has not alleged "that he has a terminal illness, has a serious physical or mental condition, or is suffering from any of the factors identified by the CDC that poses and increased risk of severe illness from COVID-19." ECF 36 at 13. The government observes that, according to the Amended PSR, Jenkins "suffers from chronic pain as a result of a 2016 stabbing," but he is otherwise in good physical health. *Id.* And, Jenkins has not provided any other information about "extraordinary and compelling circumstances" that might justify compassionate release. *Id.*

I agree with the government. Jenkins has not provided the Court with information that shows he is eligible for compassionate release. As the movant, the burden is his. "The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020). COVID-19, standing alone, does not amount to eligibility for compassionate release. And, even assuming eligibility, the factors under 18 U.S.C. § 3553(a) do not support his release.

### III.     Conclusion

For the reasons stated above, I shall deny the Motion (ECF 30), without prejudice. An Order follows.


Date: July 9, 2020                               /s/
                                       Ellen Lipton Hollander
                                       United States District Judge